UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WILLIAM DEMONT WHITE, JR., | Case No. 24-CV-0261 (PAM/JFD) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| LISA STENSETH, Warden Rush City Correctional Facility, Minnesota, | |
| Respondent. | |

Petitioner William Demont White, Jr., was convicted in state court on counts of second-degree intentional murder, first-degree assault, and arson. *See State v. White* ("*White I*"), No. A19-1398, 2020 WL 4743517, at *1 (Minn. Ct. App. Aug. 17, 2020) (affirming convictions on direct appeal); *White v. State* ("*White II*"), No. A22-1848, 2023 WL 5695630, at *1 (Minn. Ct. App. Sept. 5, 2023) (affirming denial of petition for postconviction relief). Mr. White has filed a petition for a writ of habeas corpus challenging the legality of those convictions. *See generally* Petition [Dkt. No. 1]. The petition is untimely and should be denied on that basis.

I. BACKGROUND

The Minnesota Court of Appeals summarized the events leading to Mr. White's conviction as follows:

> This case arises out of a shooting that caused the death of J.D. and injury to N.P. Trial testimony establishes the following. Appellant William White, Jr., went to a bar with [Vince Laster] and N.J., and the two victims, J.D. and N.P. In

1

the early morning hours of February 16, the group returned to the neighborhood where J.D. stayed with his sister, K.D., and her fiancé, P.H. After returning to the neighborhood, a confrontation broke out between appellant and J.D. Both N.P. and [Laster] witnessed the confrontation. N.P. testified that a "scuffle" broke out between J.D. and appellant, and N.P. approached the two men. N.P. punched appellant and then turned to walk away. In response, appellant "pistol-whipped" N.P. from behind. Next, N.P. was shot from behind.

[Laster] also saw appellant and J.D. "fighting" and "wrestling" with a gun in the street. [Laster] heard gunshots and saw N.P. fall to the ground, screaming. [Laster] did not see who shot N.P. [Laster] testified that, "[a]t that time, [J.D.] was on the ground too." N.J. was also present during the fight, and [Laster] testified that N.J. removed something from the car, which he believed was a cell phone or a charger. After the shooting, [Laster], N.J., and appellant got into J.D.'s car and drove away.

J.D.'s sister, K.D., heard the gunshots and woke up P.H. P.H. went outside and saw N.P. "screaming" and "bleeding out" on the ground. P.H. ran back inside to call for an ambulance. K.D. and P.H. then found J.D. lying on the porch, "[e]xhausted and hurt." K.D. and P.H. determined that they could not wait for an ambulance and placed the two injured men into K.D.'s car. K.D. began driving to the hospital, but a police officer pulled her car over before she reached the hospital. The officer testified that J.D. was bleeding and moaning in the front passenger seat. N.P. was lying in the backseat with his pants down and blood on his legs and on his head. The officer requested more help and several police officers arrived on the scene and provided medical care to J.D. and N.P. Two ambulances arrived and took J.D. and N.P. to the hospital. J.D. was pronounced dead at the hospital as a result of blood loss from multiple gunshot wounds.

After driving away, appellant, [Laster] and N.J. made arrangements to switch J.D.'s car with another car. The three men left J.D.'s car on a side street. After switching cars, the three men went to a gas station to purchase a gas can. The men filled the gas can with fuel but left the station without paying. Later that morning, the fire department received an alarm for a

> vehicle fire involving J.D.'s car. J.D.'s car was located about one to two miles away from the gas station. Firefighters arrived at the scene to find that the fire was "fully involved ... throughout the vehicle" and discovered a gas can near the car. An investigator took samples from the car to determine whether there was a presence of an ignitable liquid in the passenger compartment. One of these samples tested positive for the presence of an ignitable liquid. Investigators confirmed that the car belonged to J.D.
>
> A forensic scientist with the Bureau of Criminal Apprehension (the BCA), examined the bullet fragments found outside K.D.'s house. The BCA analyst determined that the fragment was from a .38 caliber bullet. The BCA analyst also examined a bullet extracted from J.D.'s body and determined that it was also a .38 caliber bullet and had been fired from the same gun that produced the bullet fragment by K.D.'s house.

*White I*, 2020 WL 4743517, at *1-2.

Mr. White was charged with two counts of first-degree murder, four counts of second-degree murder, one count of first-degree assault, one count of second-degree arson, and seven counts of crimes committed for the benefit of a gang. *Id.* at *2. After a jury trial, the district court dismissed the seven counts of crimes committed for the benefit of a gang, leaving the jury to deliberate on the remaining eight counts. *Id.* The jury returned a guilty verdict on four of those counts—two counts of second-degree murder (one count for the intentional murder of J.D., the second count for felony murder), one count of first-degree assault, and one count of second-degree arson. *Id.*

Twice Mr. White has challenged those convictions in the state court—once on direct appeal, and once through a petition for postconviction relief. On direct appeal, Mr. White argued that he was prejudiced by the joinder of his trial with that of his codefendant; that the district court should not have admitted the victim's out-of-court identification of him

3

as the shooter; that there was insufficient evidence to convict him of first-degree assault; that African-Americans were not fairly represented in the venire pool; and that the district court should not have accepted the verdict when the jury could not reach agreement on one of the counts against him. All five arguments were rejected by the Minnesota Court of Appeals. *See White I*, 2020 WL 4743517, at *2-6. The Minnesota Supreme Court declined review of the case on October 20, 2020.

On August 10, 2022,[1] Mr. White filed a petition for postconviction relief in state court raising an additional six claims. Only one of those six claims requires elucidation here. Mr. White claimed in his petition for postconviction relief—and he claims again in his habeas petition now before the Court—that the State violated his *Brady*[2] rights by failing to disclose that Laster, who testified against him, was on parole at the time of the offense and at the time of the trial. *See White II*, 2023 WL 5695630, at *6. The district court rejected the claim; the Minnesota Court of Appeals affirmed the denial:

> White argues that the prosecutor knew—but did not inform him—that Laster was on parole at the time of the February 2018 shooting. He contends that he acquired information after trial proving Laster's parole status. But as the postconviction court reasoned, White could have discerned Laster's parole status based on Laster's criminal-history information that the prosecution disclosed to him before trial. And the record suggests that the information he now claims is newly discovered was in fact available to him before his trial. We add that White also does not convincingly show that he was

---

[1] Mr. White asserts in his briefing that the petition for postconviction relief was filed on August 9, 2022, but the electronic docket for Mr. White's case maintained by the state courts reflects that the petition was filed on August 10, 2022. The minor discrepancy is not material to the outcome of this case and need not be definitively resolved.

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

> prejudiced by any inability to use Laster's parole status to impeach him. The jury heard about Laster's criminal convictions and his favorable plea deal in this case. His parole status would have added little weight to the information already available to impeach Laster's credibility.

*Id.* at *6. On December 19, 2023, the Minnesota Supreme Court denied review of the decision of the Minnesota Court of Appeals affirming the denial of postconviction relief.

Mr. White filed the habeas petition now before the Court on February 1, 2024, raising four grounds for relief: (1) the *Brady* claim described above; (2) a claim that his trial should not have been joined with that of his codefendant; (3) claims of ineffective assistance of trial and appellate counsel; and (4) claims that his right to trial before an impartial jury had been violated in various respects. *See generally* Petition. This Court ordered Respondent to show cause why the Petition should not be granted, but also alerted the parties that the Petition appeared to be untimely. *See* Order of Feb. 9, 2024 [Dkt. No. 3]. Accordingly, Respondent was granted permission to file a motion to dismiss the petition on timeliness grounds (if Respondent intended to invoke a timeliness defense) in lieu of filing a complete answer under Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. *See id.* Respondent did file a motion to dismiss on timeliness grounds in lieu of an answer, and that motion is now fully briefed and ready for review.

## II. ANALYSIS

### A. Legal Framework

Under 28 U.S.C. § 2244(d),

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to

>
> the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Mr. White is a "person in custody pursuant to the judgment of a State court," 28 U.S.C. § 2244(d)(1), and thus § 2244(d) governs the timeliness of the claims now brought by Mr. White before the Court.

A few words are necessary at the outset regarding the operation of § 2244(d). First, § 2244(d)(1) provides a one-year limitations period for prisoners to seek habeas relief in federal court. That one-year period, however, might begin on any of four possible dates, depending upon the claim being raised. Usually, a claim must be brought within one year of the petitioner's conviction having become final in state court, *see* 28 U.S.C.

6

§ 2244(d)(1)(A), but in circumstances where this would have been impossible—where the State was denying access to the federal courts, or where the claim was not available because the Supreme Court had not yet recognized the constitutional right on which the claim is based, or where the factual predicate of the claim could not reasonably have been known to the petitioner—then the prisoner is given an additional year from the time that the impediment is removed in which to present that claim, *see* 28 U.S.C. § 2244(d)(1)(B)-(D). The limitations period for claims within a single habeas petition might therefore begin on different dates—one claim, for example, might need to be raised within one-year of the conviction becoming final, while the limitations period for another claim might not begin until the factual predicate of the claim could have been discovered through the exercise of due diligence. But a single timely habeas claim does not resurrect other habeas claims whose time has passed. *See DeCoteau v. Schweitzer*, 774 F.3d 1190, 1192 (8th Cir. 2014).

Second, a finding that a habeas petition is untimely under § 2244(d) does not quite end the matter, because § 2244(d) "is subject to equitable tolling in appropriate cases."[3] *Holland v. Florida*, 560 U.S. 631, 645 (2010). But these "appropriate cases" are rare: The limitations period may be equitably tolled only where a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v.*

---

[3] A limitations defense may also be overcome where a habeas petitioner makes an appropriately convincing case that he is actually innocent of the offense, *see McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), but Mr. White does not argue that the actual-innocence exception applies in this case.

*DiGuglielmo*, 544 U.S. 408, 418 (2005)). It is the petitioner's burden to show that the limitations period should be equitably tolled. *See Pace*, 544 U.S. at 418.

### B. Section 2244(d)

Respondent seeks dismissal of Mr. White's habeas petition due to untimeliness. In determining whether the habeas petition is untimely, this Court must first determine when the limitations period for Mr. White's claims began to run.

Of the four potential dates provided by § 2244(d)(1) for the beginning of the limitations period, only two are relevant to this case. Mr. White does not allege that there was an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States," 28 U.S.C. § 2244(d)(1)(B), and his claims do not depend upon a constitutional right that was only recently recognized by the Supreme Court, *see* 28 U.S.C. § 2244(d)(1)(C). The limitations period for Mr. White's claims therefore began either when the judgment in his case became final, *see* 28 U.S.C. § 2244(d)(1)(A), or when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D).

The date established by § 2244(d)(1)(A) can be calculated with precision—and, once calculated, it is apparent that any claim brought by Mr. White that is governed by § 2244(d)(1)(A) is untimely. The Minnesota Supreme Court declined review of Mr. White's direct appeal on October 20, 2020. Mr. White was then entitled to seek a petition for a writ of certiorari from the Supreme Court of the United States. He did not do so, and the judgment in his case became final when the deadline for seeking a writ of certiorari expired. *See Jihad v. Hvass*, 267 F.3d 803, 804-05 (8th Cir. 2001). A litigant ordinarily has

8

ninety days in which to seek review from the Supreme Court of the United States, but at the time that the Minnesota Supreme Court declined review of Mr. White's conviction, the certiorari deadline had been extended to 150 days on account of the COVID-19 pandemic. *See* U.S. Sup. Ct. R. Filing Extensions Order (issued Mar. 19, 2020, rescinded July 19, 2021). Accordingly, the limitations clock for any claim governed by § 2244(d)(1)(A) began running 150 days after October 20, 2020, or on March 19, 2021. Mr. White therefore would have had one year, or until March 21, 2022,[4] in which to seek relief on any claims whose timeliness was governed by § 2244(d)(1)(A). He did not file his habeas petition until February 1, 2024. To be sure, for part of that time, Mr. White had been seeking postconviction relief in the state courts, and that time would not count against the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2). But Mr. White did not commence postconviction proceedings in state court until August 10, 2022—that is, four months *after* the federal limitations period established by § 2244(d)(1)(A) had already expired.

So far as this Court can tell, Mr. White does not dispute that any claim governed by § 2244(d)(1)(A) falls outside of the statutory limitations period. Instead, Mr. White insists that one of his claims—his *Brady* claim—is governed by § 2244(d)(1)(D), because the factual predicate of the *Brady* claim "did not become available to him until June 10, 2022, when he received the Certified Disposition from the Clerk of the Circuit Court of Cook County" showing that Laster had been on probation when the crime and trial occurred. *See*

---

[4] Exactly one year after March 19, 2021, is (of course) March 19, 2022, but that date was a Saturday, and Mr. White would have been entitled until the next business day to file his habeas petition. *See* Fed. R. Civ. P. 6(a)(1)(C).

9

Pet. Br. at 21 [Dkt. No. 15]. If the limitations period for the *Brady* claim began on June 10, 2022, then—after accounting for time in which the limitations period was tolled by § 2244(d)(2) due to ongoing state-court postconviction proceedings—Mr. White's claim under *Brady* would be timely.

There are three problems with Mr. White's argument, however. The first is that the argument does nothing to salvage any of his other claims for relief. Even if § 2244(d)(1)(D) governed the timeliness of his *Brady* claim, § 2244(d)(1)(A) would govern still the timeliness of the remaining claims. And as explained above, any claims governed by § 2244(d)(1)(A) are plainly untimely.

Second, Mr. White's argument that he could not have known that Laster was on probation until he was handed a certified disposition from the clerk of court where Laster's criminal proceedings had been conducted is not convincing. Laster's criminal history was not esoteric information; his status as a parolee would have been available to Mr. White at any point during or after his criminal proceedings. Nor is this a case in which a factual predicate, though technically available, is so non-obvious as to be practically indiscoverable. Mr. White himself describes Laster as "the prosecution's primary witness against him," Pet. Br. at 23, and he was aware that Laster had a criminal history, *see White II*, 2023 WL 5695630, at *6 (noting that "[t]he jury heard about Laster's criminal convictions . . . .").[5] Laster's credibility would have been an obvious matter of contention.

---

[5] In his briefing, Mr. White characterizes this argument (when made by Respondent) as placing the burden on him to have discovered the alleged *Brady* violation. But this puts the cart before the horse. The question before the Court is not whether the State of Minnesota violated its duties under *Brady* or even whether Mr. White has adequately pleaded such a

10

Third, the state trial court that denied Mr. White's petition for postconviction review concluded that Mr. White could have learned of Laster's parolee status, and in doing so, made the following factual determinations:

> The record reflects that the prosecutor sought and received permission from the court to disclose to Petitioner's counsel a printout of Vance Laster's criminal history from Illinois law enforcement agencies, and on a later date, relevant portions of Vance Laster's Presentence Investigation Report, which was prepared after Laster's plea and before White's trial. The exact contents of the Illinois law enforcement criminal history provided is not in the record before the court. However, the PSI document included a record of Laster's criminal convictions, which include several felony convictions in Illinois, the latest of which resulted in a thirty six month prison sentence imposed on March 24, 2016. The conduct alleged in the [prosecution against Mr. White] occurred in February of 2018, thus White and his trial counsel clearly knew that Laster had been released from prison in Illinois before thirty six months had elapsed. . . . Petitioner's counsel asserts that Illinois Statues provide for parole "good time release" after service of 50% of a prison sentence. This statute was presumably accessible at the time of trial, as it is today.

*State v. White*, No. 05-CR-18-617, Order of October 31, 2022 (Minn. Dist. Ct.).

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The excerpt quoted above is chock-full of factual findings—that the prosecution turned over documents related to Laster's criminal history; that the conviction for which Laster was convicted was included on at least one of those documents; and that anyone could have known that Laster

---

claim, but instead whether the factual predicate of the *Brady* claim could have been known to Mr. White with reasonable diligence at the time of his trial. It could have.

11

was on parole based on the information contained in those documents given the operation of Illinois law—and Mr. White has not rebutted any of those findings by clear and convincing evidence. Armed with that information, Mr. White or his attorney could have, with reasonable diligence, investigated prior to trial into whether Laster was on parole.

The timeliness of Mr. White's *Brady* claim is therefore governed by § 2244(d)(1)(A), not § 2244(d)(1)(D). Because the *Brady* claim is governed by § 2244(d)(1)(A), Mr. White has sought habeas relief on the claim in federal court too late. That claim, and all of Mr. White's other claims, fall habeas outside of the limitations period established by § 2244.

## C. Equitable Tolling

Mr. White could nevertheless avoid the effects of § 2244(d) by showing that he is entitled to equitable tolling—that is, "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418). Mr. White makes such an effort, arguing that the COVID-19 pandemic caused him to be unable to file a petition for postconviction relief in state court until a year after the judgment in his case had become final, by which point the federal limitations window for habeas relief had already closed.

Much of Mr. White's briefing on the subject of equitable tolling establishes the proposition that the pandemic has been cited by courts as a basis for allowing petitioners to file a habeas petition that would otherwise be untimely. But the fact that COVID-19 prevented some prisoners from seeking habeas relief on time despite their best efforts does not mean that COVID-19 is an all-purpose, get-out-of-untimeliness-free card. *See United*

*States v. Sayonkon*, No. 16-CV-0265(2) (ADM/HB), 2022 WL 607474, at *3 (D. Minn. Mar. 1, 2022) (collecting cases). A habeas petitioner pointing to the pandemic as the reason that he did not seek habeas relief within the limitations window still must establish how, specifically, the pandemic prevented him from prosecuting his claims. *See Holland*, 560 U.S. at 650.

In his briefing, Mr. White does not even attempt to tie the circumstances of his tardy filing to the ongoing pandemic:

> White contends he has been pursuing his rights diligently and that Covid-19 constituted extraordinary circumstances beyond his control that resulted in his petition being untimely due to time that ran during the heart [of] the pandemic. During these times, states like Minnesota tolled many court filing deadlines and entities like the United States Supreme Court, on March 19, 2020, extended the cert filing deadline from 90 to 150 days, which reflects the reality of the time, which was that nothing was clear, everything seemed and felt dangerous, and nearly every aspect of life was impacted in some way or another. It is with these circumstances in mind that White respectfully requests that this Court exercise its equitable authority to review the merits of his claims to ensure that extreme and extraordinary circumstances that arose during the uncertainty of the initial Covid-19 lockdowns.

Pet. Br. at 32. But this is an argument that would apply to *any* habeas petitioner following the onset of the pandemic. Plainly, though, not every habeas petitioner whose limitations period would have expired following the onset of the COVID-19 pandemic is entitled to equitable tolling. *Cf. United States v. Henry*, No. 2:17-CR-0180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) ("The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis.").

Mr. White's claim to entitlement to equitable tolling on account of the pandemic is especially flimsy. For one thing, Mr. White's filing deadline did not fall within the period when—as he puts it—"nothing was clear, everything seemed and felt dangerous, and nearly every aspect of life was impacted in some way or another." Pet. Br. at 32. Under § 2244(d)(1)(A), Mr. White was not required to file his habeas petition until March 21, 2022—that is, more than *two years* after the onset of the pandemic. By July 2021, with eight months yet remaining on Mr. White's federal habeas limitations clock, things had sufficiently returned to normal that the Supreme Court rescinded its temporary rule extending the deadline for filing a petition for a writ of certiorari. By this Court's count, 171 habeas corpus petitions were filed in this District during Mr. White's one-year limitations period (March 19, 2021, though March 21, 2022), plus another 31 motions for relief under 28 U.S.C. § 2255. Many, many prisoners were capable of timely seeking postconviction relief during the period that Mr. White alleges COVID-19 posed an insuperable barrier to him doing so.

To be sure, Mr. White would have been required to present his claims to the state courts before coming to federal court. But there is no reason to believe that the state courts were still functioning abnormally by the time that Mr. White's criminal judgment had become final or for the year thereafter; certainly, Mr. White provides no such evidence. Moreover, even if there had been continuing impediments to seeking relief in the state courts caused by COVID-19, Mr. White could have presented his claims to this Court and sought a stay of the federal proceedings so that he could first exhaust his claims in state court. *See Rhines v. Weber*, 544 U.S. 269, 271-72 (2005). And for at least some of this

14

period (though the record is unclear regarding exactly how much), Mr. White—unlike most of the prisoners who, notwithstanding COVID-19, were capable of timely seeking postconviction relief—was represented by counsel.[6]

Mr. White has not shown that he acted with the necessary diligence, and he has not shown that any extraordinary impediment stood in his way prior to seeking habeas relief. He has no colorable entitlement to equitable tolling.

### D. Conclusion

Mr. White's habeas petition needed to be filed by no later than March 21, 2022. He missed that deadline, and he has not established a basis for equitably tolling the deadline. Accordingly, Respondent's motion to dismiss should be granted and the habeas petition should be denied. Finally, should this matter be dismissed on timeliness grounds, this Court does not believe that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. White therefore should not be issued a certificate of appealability. See 28 U.S.C. § 2253(c)(1).

---

[6] Mr. White's state-court postconviction proceedings concluded on December 19, 2023, when the Minnesota Supreme Court declined review of his case. His federal habeas petition was not filed until February 1, 2024. Mr. White was represented by the same counsel in both proceedings. "Where a § 2255 proceeding is equitably tolled, only enough time will remain on the game clock for the litigant to take a single shot (file the action), regardless of how long external obstacles might previously have barred the litigant from acting." *United States v. Buckhanan*, No. 21-CR-74 (MJD/LIB), 2023 WL 9502153, at *3 (D. Minn. Aug. 31, 2023). Mr. White does not explain the six-week delay in preparing and filing a habeas petition whose claims had already been presented and developed in state court. This six-week delay, taken alone, would have rendered dubious any entitlement to equitable tolling that Mr. White might have had.

RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. The motion to dismiss of petitioner Lisa Stenseth [Dkt. No. 12] be GRANTED.

2. The petition for a writ of habeas corpus of petitioner William Demont White, Jr. [Dkt. No. 1] be DENIED.

3. This matter be DISMISSED.

4. No certificate of appealability be issued.

Dated: August 30, 2024    _s/ John F. Docherty_____
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).